IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _AC_ D.C.

05 JUL 26 PM 1: 25

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

CHRISTINE DEENER, et al.,

     Plaintiff,

v.                                                    No. 03-2255-B/A

KINDRED HEALTHCARE, INC., et al.,

     Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

This action involves a wrongful death suit originally filed in state court and removed to this court based on diversity of citizenship. Plaintiff, Christine Deener, as guardian for and on behalf of Angela Carroll's minor children, brings this action against Defendants, Kindred Healthcare, Inc. and Kindred Nursing Centers Limited Partnership doing business as Spring Gate Rehabilitation and Healthcare Center ("Spring Gate Center"). Carroll was employed by Spring Gate Center where on February 28, 2002, Franklin Fitch entered the facility and shot Carroll several times, fatally wounding her. Plaintiff alleges that the Defendants, as Carroll's employers, failed to provide adequate security and to prevent foreseeable violence against her by Fitch. Before the Court are Defendants' motions to dismiss pursuant to Rule 12(b)(6) and for summary judgment under Rule 56, Federal Rules of Civil Procedure. As responses have been filed, these motions are now appropriate for disposition.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 7-27-05



FACTS

On February 28, 2002, Carroll was working for Spring Gate Center when Franklin Fitch, a former boyfriend, came to her place of work. (Defs.' Mem. Law Statement Undisputed Material Facts Supp. Its Mot. Summ. J. at 3 ("Defs.' Mem."). Upon arriving, Fitch asked Viola Edwards, a certified nurse's assistant employed by Spring Gate Center, for Carroll's whereabouts. (Compl. ¶ 6; Defs.' Mem. 3; Pl.'s Resp. Defs. Mot. Summ. J. at 1 ("Pl.'s Resp.").) According to Edwards, Fitch was calm and polite. She then proceeded to tell him that Carroll was located at Nurses Station #2. (Defs.' Mem. at 3; Pl.'s Resp. at 1.) Fitch then went to decedent's duty station and fatally shot her. (Defs.' Mem. at 3.) Afterwards, Fitch left and went to another location where he was arrested. (Defs.' Mem. at 4; Pl.'s Resp. at 2.)

Sometime prior to the shooting, Carroll had obtained an order of protection against Fitch to prevent him from coming around her. (Defs.' Mem. at 4 & Ex. J; Pl.'s Resp. at 2.) However, Carroll's order was dismissed less than a month before she was killed because she failed to appear at a hearing on the order. (Defs.' Mem. at 4; Pl.'s Resp. at 2.)

Deener filed this suit in the Circuit Court of Shelby County, Tennessee, on February 27, 2003, against the Defendants seeking compensatory and punitive damages. Plaintiff alleges that the Defendants had notice of the potential danger of Fitch to Carroll and were aware of the protective order entered against him as well as of his violent behavior and threats against the deceased. (Compl. ¶¶ 5, 7.) Defendants' motion to dismiss argues that Plaintiff's lawsuit is barred by the exclusive remedies of the Tennessee Workers' Compensation Law ("TWCL"), Tenn. Code Ann. § 50-6-101 et seq. (1999 Repl. & Supp. 2004). Additionally, Defendants' motion for summary judgment claims that Plaintiff cannot prove the essential elements of her negligence claim. Each of

these motions will be considered in turn.

## STANDARD OF REVIEW

Rule 12(b)(6) permits the dismissal of a lawsuit for failure to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6). The Rule requires the court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). A complaint need not "anticipate every defense and accordingly need not plead every response to a potential defense." Memphis, Tenn. Area Local, Am. Postal Workers Union v. Memphis, 361 F.3d 898, 902 (6th Cir. 2004). The court's narrow inquiry on a motion to dismiss under Rule 12(b)(6) "is based upon whether the claimant is entitled to offer evidence to support the claims, not whether the plaintiff can ultimately prove the facts alleged." Osborne v. Bank of Am., Nat'l Ass'n, 234 F. Supp. 2d 804, 807 (M.D. Tenn. 2002) (citations and internal quotations omitted).

Federal Rule of Civil Procedure 56 states in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion is supported by

3

documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S.Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

### I. Motion to Dismiss

Defendants assert that the TWCL provides the exclusive remedy for Plaintiff's claim because Carroll was an employee of Spring Gate Center and at work when the incident occurred. (Defs.' Mot. Mem. Dismiss at 3-4.) The TWCL states that "the rights and remedies . . . granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident . . . shall exclude all other rights and remedies of such employee . . . on account of such injury or death." Tenn. Code Ann. § 50-6-108. Therefore, if the rights and remedies under the TWCL are available to the Plaintiff, then the Act prohibits this litigation. See Williams v. Carolina, C. & O. Ry. Co., 289 S.W. 520, 521-22 (Tenn. 1926) (stating that when the Act applies it precludes all common-law actions against the employer). The TWCL is concerned with "personal injury or death by accident arising out of and in the course of employment without regard to fault as a cause of the injury or death." Tenn. Code Ann. § 50-6-103(a). An injury occurs "in the course of

4

employment" when it occurs at work. <u>Anderson v. Save-A-Lot, Ltd.</u>, 989 S.W.2d 277, 279 (Tenn. 1999) (applying a time, place, and circumstances test to determine whether the injury occurs in the course of employment). Therefore, since the Plaintiff complains about an injury that occurred while Carroll was working, the incident occurred in the course of her employment. An injury "arises out of the employment" when there is a "causal relationship between the employment and the injury." <u>Wood v. Harry B. Woods Plumbing Company, Inc.</u>, 967 S.W.2d 768, 771 (Tenn. 1998) (citing <u>Orman v. Williams Sonoma, Inc.</u>, 803 S.W.2d 672, 676 (Tenn. 1991)). The injury arises out of the employment if it "followed as a natural incident of employee's work[,] [was] contemplated by [a] reasonable person familiar with the whole situation as [a] result of [the] exposure occasioned by nature of [the] employment[,] . . . [appeared] to have had its origin in a risk connected with the employment and have flowed from that source as a rational consequence." <u>T.J. Moss Tie Co. v. Rollins</u>, 235 S.W.2d 585, 586 (1951). For example, "'an injury arising from an assault on an employee committed solely to gratify [the employer's] personal ill-will, anger, or hatred, or an injury received in a fight purely personal in nature with a fellow employee, does not arise out of the employment within the meaning of the [workers'] compensation acts.'" <u>Anderson</u>, 989 S.W.2d at 281 (emphasis omitted) (quoting 82 Am. Jur. 2d *Workmen's Compensation* § 330, at 128 (1976)).

Defendants cite to <u>Thomas v. General Electric Co.</u>, 494 S.W.2d 493, 495 (Tenn. 1973), in which the Tennessee Supreme Court held that the plaintiff's complaint in alleging that the employee-employer relationship provided a duty on the employer to protect the employee from criminal assaults by third persons "is but another way of alleging appellant was not provided with a safe place to work" and concluded any "recourse must be had, if at all, under the [Workers'] Compensation Act." Defendants contend that the present case is no different from <u>Thomas</u> because the Plaintiff

5

is alleging that Spring Gate Center failed to protect Carroll from a criminal attack by a third person. (Defs.' Mot. Mem. to Dismiss at 4-5.)

In her response, Deener insists that Carroll's death did not arise out of her employment. In Wood, the Tennessee Supreme Court discussed three types of assaults upon employees at work and labeled them as either compensable or not compensable under the TWCL. The court stated

> that issues of whether assaults upon employees arise out of the scope of employment can best be divided into three general classifications: (1) assaults with an "inherent connection" to employment such as disputes over performance, pay or termination; (2) assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and (3) assaults resulting from a "neutral force" such as random assaults on employees by individuals outside the employment relationship.

Wood, 967 S.W.2d at 771. Assaults with an "inherent connection" to the employment are deemed compensable while those "stemming from 'inherently private' disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment are not . . . ." Id. (citing White v. Whiteway Pharmacy, Inc., 360 S.W.2d 12, 14-15 (1962) (employee murdered on employer's premises by non-employee husband over domestic dispute non-compensable)). Finally, attacks "resulting from a 'neutral force' such as random assaults may or may not be compensable depending on the facts and circumstances of the employment." Id.

Plaintiff contends that the shooting in this case stemmed from an "inherently private" dispute between Carroll and her ex-boyfriend, Fitch. (Pl.'s Resp. Def.'s Mot. Dismiss at 3.) In their motions to dismiss and for summary judgment, the Defendants summarize the present litigation as "involv[ing] the fatal shooting of certified nurses' assistant Angela Carroll by her boyfriend, Franklin Fitch, on February 28, 2002." (See Defs.' Mot. Mem. Dismiss at 2; Defs.' Mem. at 1.) As Defendants seem to concede that Fitch and Carroll were involved in a personal relationship dispute,

6

the Court finds that the attack was introduced into the employment setting from Plaintiff's private life and not exacerbated by her employment. See Wood, 967 S.W.2d at 771; see also Leegrand v. Trinity Universal Ins., No. W2000-02664-SC-WCM-CV, 2002 WL 1050257, *3 (Tenn. May 22, 2002). Accordingly, the Court concludes that Fitch's assault on Carroll was "inherently private" and thus, not compensable under the TWCL. See Wood, 967 S.W.2d at 771; White, 360 S.W.2d at 14-15.

    II. Motion for Summary Judgment

    Defendants posit three arguments in support of their motion for summary judgment: (1) no duty of care was owed to Carroll because Fitch's criminal act was unforeseeable; (2) Deener failed to plead that Defendants had knowledge of the criminal propensities of Fitch; and (3) the decedent's fault for her own injuries was greater than that of the Defendants and therefore, the Plaintiff is precluded from recovery.

    To establish a claim of negligence under Tennessee law, the plaintiff must prove: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995) (citations omitted). The primary issue before the Court is whether the Defendants had a duty to protect Carroll from the attack by Fitch. The question of whether a duty is owed by a defendant to the plaintiff is a question of law to be determined by the Court. Pittman v. Upjohn Co., 890 S.W.2d 425, 428 (Tenn. 1994) (citations omitted); Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993) (citations omitted). In McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891 (Tenn. 1996), that duty of care was defined as the "legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for

protection against unreasonable risks of harm." McClung, 937 S.W.2d at 894 (citing McCall, 913

S.W.2d at 153). The Tennessee Supreme Court addressed the issue of the duty owed by a business

to its customers in protecting them against criminal acts of third parties. This standard has also been

applied in determining whether an employer owes a duty of care to its employees. See Chowbay v.

Davis, No. M2001-01838-COA-R3-CV, 2002 WL 1389604, at *3 (Tenn. Ct. App. June 27, 2002)

(applying McClung to the employer-employee context). In McClung, the court stated that

> [a] business ordinarily has no duty to protect customers [or employees] from the
> criminal acts of third parties which occur on its premises. The business is not to be
> regarded as the insurer of the safety of its customers [or employees], and it has no
> absolute duty to implement security measures for the protection of its customers [or
> employees]. However, a duty to take reasonable steps to protect customers [or
> employees] arises if the business knows, or has reason to know, either from what has
> been or should have been observed or from past experience, that criminal acts against
> its customers [or employees] on its premises are reasonably foreseeable, either
> generally or at some particular time.

McClung, 937 S.W.2d at 902. In short, "'the degree of foreseeability needed to establish a duty

decreases in proportion to the magnitude of the foreseeable harm' and the burden upon defendant

to engage in alternative conduct." Id. (quoting Pittman, 890 S.W.2d at 433). The court concluded

that "[a]s a practical matter, the requisite degree of foreseeability essential to establish a duty to

protect against criminal acts will almost always require that prior instances of crime have occurred

on or in the immediate vicinity of defendant's premises." Id.

Defendants argue that Fitch's actions were unforeseeable due to the lack of prior criminal

activity at the location and the lack of knowledge regarding Fitch's dangerous propensities. Spring

Gate Center points to the fact that from 1999 to February 28, 2002, there were only fifteen calls to

the police from the nursing home, none of which concerned violent crimes at the facility. (Defs.'

Mem. at 9 & Ex. A: Affidavit of Dr. Rosemary Erickson ¶ 12.)  Additionally, Chris Trim[1] testified

that before February 28, 2002, there had been no prior incidents of homicide or other violent crimes

at Spring Gate Center. (Defs.' Mem. at 9 & Ex. K: Deposition of Christopher C. Trim at 44.)  Dr.

Rosemary Erickson, a forensic sociologist hired by the Defendants, similarly stated that there had

been no such incidents committed before February 28, 2002. (Defs.' Mem., Ex. A: Erickson aff. ¶

11.)  As further support for their position, Defendants submit that the CAP Index[2] indicates that the

area surrounding the nursing home has a below average crime rate based on a score of 59, when 100

was considered the national average for crime vulnerability in 2002. (See Defs.' Mem. at 10.)

Furthermore, Defendants claim that Carroll failed to inform management about Fitch's

previous harassment or the order of protection.[3]  Two of Carroll's co-workers, Renee Tutor and

Angela Kay McCollough, testified that they were not aware of any Spring Gate Center employees

who had knowledge of the order of protection. (Defs.' Mem. at 15 & Ex. G: Deposition of Renee

Tutor at 47-48, Ex. H: Deposition of Angela Kay McCollough at 46-47.)  Further, Defendants cite

---

[1] The Defendants as well as the Plaintiff have failed to indicate who Chris Trim is and the source of his knowledge.  However, based on the statements submitted by both parties, Trim appears to be employed by the Defendants.  Nonetheless, the Court will consider the testimony since both parties rely upon it.

[2] CAP Index is a consultant service that provides information to business and attorneys regarding the risk of crime in a particular area based on statistical data.  See www.capindex.com. Defendants maintain that the CAP Index replaces the need for securing and analyzing police statistics independently because it rates locales based on the number of crimes that have been committed within a close proximity of the location in question. (Defs.' Mem. at 9, Ex. A: Erickson aff. ¶ 8.)

[3] Although this part of the Defendants' memorandum is discussed under the issue of whether Carroll was more at fault than the Defendants, the testimony of Plaintiff and Carroll's co-employees is relevant to the question of foreseeability.  See McClung, 937 S.W.2d at 902 (stating that a duty arises if the "business knows, or has reason to know, . . . that criminal acts against its customers [or employees] . . . are reasonably foreseeable").

to Deener's deposition in which she stated that she had no knowledge of the order of protection or that Fitch had hurt Carroll, her sister, in any way. (Defs.' Mem. at 15 & Ex. I: Deposition of Christine Deener at 20.)

In response, Plaintiff argues that the Defendants assumed the duty to provide adequate security to protect the residents and employees of Spring Gate. In support of her assertion, Plaintiff relies upon Marr v. Montgomery, 922 S.W.2d 526 (Tenn. Ct. App. 1996), where the Tennessee Court of Appeals adopted the Restatement (Second) of Torts § 324A, which provides that:

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Marr, 922 S.W.2d at 529 (quoting Restatement (Second) of Torts § 324A). At the time of the incident in question, Spring Gate Center had hired County Wide Security Company ("County Wide") to provide security services from 10:00 p.m. to 7:00 a.m. (Pl.'s Resp. at 4 & Ex. B.) Plaintiff pointed to County Wide's "post orders," which stated that past problems at Spring Gate had included "minor thefts and employees being visited by friends and relatives during working hours." (Pl.'s Resp. at 6 & Ex. B.) The post orders also provided that "[a]fter 2300 [11:00 p.m.], all persons coming into the building will be required to sign in on the sign-in sheet provided by Spring Gate. The officer will monitor this procedure and inform all persons to sign-in." (Pl.'s Resp. at 6 & Ex. B.)

However, as Plaintiff recognizes, the security service was only employed from 10:00 p.m. to 7:00 a.m. and Carroll was murdered at 5:30 p.m. while no security guard was on duty. (Pl.'s Resp.

10

at 5-6 & Ex. B.)  Even assuming that the purpose of the security services employed by Spring Gate

Center was for the protection of its employees and residents, such a duty was not undertaken for the

time when Carroll was killed.  This reasoning comports with the manner in which other courts have

analyzed the language of § 324A of the Restatement.  In Hill v. Chicago Housing Authority, 599

N.E.2d 1118, 1126 (Ill. App. Ct. 1992), the Illinois Court of Appeals stated that the duty owed under

§ 324A "is limited by the extent of the undertaking and the agreement of the parties."  Id. (finding

that the security agency undertook only the duty to protect property and not to protect persons on the

premises of the housing authority); see also Roe v. Dep't of Soc. & Rehab. Servs., 102 P.3d 396, 404

(Kan. 2004) (noting that "the extent of a Restatement (Second) of Torts § 324A undertaking defines

the scope of the duty that arises as a result"); Artiglio v. Corning Inc., 957 P.2d 1313, 1318 (Cal.

1998) (stating that the precise extent of a § 324A duty depends on the nature and extent of the act

undertaken).  Similarly, in Pippin v. Chicago Housing Authority, 399 N.E.2d 596, 599 (Ill. 1979),

the Illinois Supreme Court found that a housing authority who hired a security agency to provide

protection for its property and persons thereon "did not undertake to perform the guard services

itself" and "can therefore be liable at most for the negligent hiring of [the security agency]."

Likewise, in the present case, the Defendants did not take on the responsibility of performing the

protection services but merely hired County Wide.  Moreover, the Defendants did not assume the

duty of providing security at the time of day when Carroll was attacked.  There is nothing in the

record before the Court which would indicate that the Spring Gate premises were more unsafe or in

more need of security in the afternoon hours.  Deener's argument appears to be based on the fact that

the Defendants acted unreasonably in not providing security throughout the course of the entire day.

(See Pl.'s Resp. at 6-7.)  As such, the Court finds that the question of whether the Defendants should

11

have employed a security service for a longer period of time is more appropriately analyzed under the principles set forth in McClung. See McClung, 937 S.W.2d at 902 ("In determining the duty that exists, the foreseeability of harm and the gravity of harm must be balanced against the commensurate burden imposed on the business to protect against that harm.").

Under McClung, Plaintiff submits that Spring Gate Center had sufficient criminal activity to justify an armed guard to enforce its security policies. (Pl.'s Resp. at 7.)  According to Deener, Spring Gate Center "had experienced a previous documented incident of domestic violence on its premises when a disgruntled girlfriend smashed out the windows of an employee's car with a crowbar after he tried to end the relationship." (Pl.'s Resp. at 7 & Ex. N.)  Additionally, Plaintiff contends that the Memphis Police Department records revealed that over 4,000 calls were received from within a one mile radius of the facility between February 27, 1997 and February 27, 2002. (Pl.'s Resp. at 3 & Ex. M.)

Nevertheless, Plaintiff concedes that the administrators of Spring Gate had no knowledge of Carroll's previous difficulties with Fitch or that an order of protection had been placed against him. (Pl.'s Resp. at 8-9.)  Although Deener cites to the deposition testimony of Valerie Tipton, an employee of Spring Gate Center, in which she stated that she had knowledge of Fitch's prior threats against the deceased, there is no proof that such information had been provided to the Spring Gate administrators. (Pl.'s Mot. Correct Clerical Error, Ex. I.)

Viewing the evidence in the light most favorable to the Plaintiff and under McClung, the Court is unable to conclude that the Defendants owed Carroll a duty to protect her from the assault by Fitch based on the lack of foreseeability of the attack. McClung requires a court to consider "the location, nature, and extent of previous criminal activities and their similarity, proximity, or other

12

relationship to the crime giving rise to the cause of action." McClung, 937 S.W.2d at 902. Although Plaintiff has included a list of over 4,000 calls to the police during the four years prior to Carroll's death, the Court is unable to relate the incidents reported to what occurred on February 28, 2002. (See Pl.'s Resp., Ex. M.)  For example, almost all of the death-related calls involved deaths from natural causes. (See Pl.'s Resp., Ex. M.)  Additionally, the Plaintiff has not pointed to any specific assaults which occurred on or near the nursing home.  Moreover, the one incident on Spring Gate Center's premises to which Deener does cite involved only vandalism and not any personal attacks on employees or customers of the nursing home. (See Pl.'s Resp. at 7 & Ex. N.)  Vague allegations of prior criminal occurrences against unnamed victims generally do not create a genuine issue as to foreseeability. See Figueroa v. Evangelical Covenant Church, 879 F.2d 1427, 1439 (7th Cir. 1989) (finding that the attack on the plaintiff was not foreseeable when there was no proof of an attack remotely resembling the one on plaintiff occurring anywhere in the immediate vicinity).  The Plaintiff has not cited to a single incident in which a third-party committed an assault on an employee or resident inside or outside the nursing home. See McClung, 937 S.W.2d at 902 (stating that to establish "the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of defendant's premises").  Finally, Deener has not submitted any evidence which would suggest that the Defendants were cognizant of the threat posed by Fitch to Carroll.

The testimony of Dr. Erickson and Chris Trim both confirm that there had been no prior violent crimes committed at Spring Gate Center. (See Defs.' Mem. at 9 & Ex. A and K.)   In addition, Plaintiff did not address the Defendants' arguments regarding the low CAP index for the area around Spring Gate.  Considering the facts in the light most favorable to the Plaintiff, the Court

13

finds that the Plaintiff has failed to prove Defendants owed a duty to protect Carroll from the unforeseeable harm caused by Fitch. Thus, based on the Court's resolution of the Defendants' first argument in their favor, a ruling on their remaining contentions is unnecessary.

CONCLUSION

For the reasons stated herein, the Court DENIES Defendants' motion to dismiss but GRANTS their motion for summary judgment.

IT IS SO ORDERED this 25th day of July, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 100 in case 2:03-CV-02255 was distributed by fax, mail, or direct printing on July 27, 2005 to the parties listed.

---

F. Laurens Brock
CHAMBLISS BAHNER & STOPHEL
Two Union Square
1000 Tallan Bldg.
Chattanooga, TN 37402

Darrell E. Baker
BAKER & WHITT PLLC
6800 Poplar Ave.
Ste. 205
Memphis, TN 38138

Deborah Whitt Baker
BAKER & WHITT PLLC
6800 Poplar Ave.
Ste. 205
Memphis, TN 38138

Ron W. McAfee
LAW OFFICE OF RON W. MCAFEE
251 Adams Ave.
Memphis, TN 38103

Elaine Sheng
BOROD & KRAMER
80 Monroe Ave.
Ste. G-1
Memphis, TN 38103

Bruce S. Kramer
BOROD & KRAMER
80 Monroe Ave.
Ste. G-1
Memphis, TN 38103

Anthony A. Jackson
CHAMBLISS BAHNER & STOPHEL
1000 Tallan Bldg.
Chattanooga, TN 37402

Honorable J. Breen
US DISTRICT COURT